# **Exhibit A**

# CONTRACT FOR PURCHASE AND SALE

**WESTGATE PALACE, A Time Share Resort**
6145 Carrier Drive
Orlando, Florida 32819

**SELLER/DEVELOPER**
**WESTGATE PALACE, L.L.C.**
2801 Old Winter Garden Road
Ocoee, Florida 34761

**Purchaser:** Miranda L Steines

Adam U Steines

Wife and Husband

**Address:** 207 SOUTH FIFTH ST

SPRING LAKE, NC 28390 USA

**Home Telephone:** 9077501318                **Business Telephone:**

Purchaser (s) agree (s) to purchase and Seller agrees to sell to Purchaser one (1) or more timeshare interests in the Time Share Accommodations known as WESTGATE PALACE, a TimeShare Resort, 6145 Carrier Drive, Orlando, Florida 32819, pursuant to the terms and conditions of this Contract for Purchase and Sale and the TimeSharing Plan, a copy of which is included with the Public Offering Statement that each Purchaser receives upon execution of a contract for Purchase and Sale, together with all improvements, easements, rights, privileges and appurtenances pertaining to said TimeShare Interest as set forth in the Time Sharing Plan and all Exhibits thereto:

**2 - BEDROOM STANDARD**

**Number of Time Share Interests Purchased:** 1/2
**Assigned Unit(s) / Unit Week(s) / Year(s):**
1-1912 / 22 / ODD

**Fixed or Floating:** All Season - Float Week / Float Unit
**First Available Occupancy Date:** 2021

**Estimated Ad Valorem Tax Assessments:** Even Years $ 0.00          Odd Years $ 89.00

**Estimated Maintenance Assessments:** Even Years $ 0.00             Odd Years $ 753.00

| | |
|---|---|
| 1. Purchase Price | $ 8,000.00 |
| 2. Closing Charges | $ 291.00 |
| 3. Exchange Membership Dues | $ 99.00 |
| *(In the event Purchaser elects to become a member of the exchange program)* | |
| 4. Debt Waiver For Loss of Life* _Miranda L Steines_ | $ 545.52 |
| 5. Debt Waiver For Involuntary Unemployment* _Miranda L Steines_ | $ 279.35 |
| 6. Total (1+2+3+4+5) | $ 9,214.87 |
| 7. Deposit Made this Date | $ 300.00 |
| 8. Additional Deposit Due 09/29/2019 / $148.00  10/29/2019 / $148.00  11/28/2019 / $148.00  12/28/2019 / $148.00  01/27/2020 / $149.00 | $ 890.00 |
| 9. Total Down Payment (7+8) | $ 1,190.00 |
| 10. Amount Financed (6 minus 9) | $ 8,024.87 |

*Additional information regarding Debt Waiver for Loss of Life and Debt Waiver for Involuntary Unemployment is available upon request.
THIS AGREEMENT is subject to the terms and conditions set forth on the reverse side hereof which by reference is made a part hereof.

The developer has limited your resale rights. Any future purchaser (other than a transfer as the result of death, divorce or to an immediate family member) who buys your timeshare interest from you will have severely limited opportunity to reserve occupancy in this timeshare plan.

For the purpose of ad valorem assessment, taxation and special assessments, the managing entity will be considered the taxpayer as your agent pursuant to section 192.037, Florida statutes.

You may cancel this contract without any penalty or obligation within ten (10) calendar days after the date you sign this contract or the date on which you receive the last of all documents required to be given to you pursuant to section 721.07(6), Florida statutes, whichever is later.

If you decide to cancel this Contract, you must notify[1] the Developer in writing of your intent to cancel. Your notice of cancellation shall be effective upon the date sent and shall be sent to Westgate Palace, LLC, 2801 Old Winter Garden Road, Ocoee, Florida 34761. Any attempt to obtain a waiver of your cancellation rights is void and of no effect. While you may execute all closing documents in advance, the closing, as evidenced by delivery of the deed or other document, before expiration of your ten (10) day cancellation period, is prohibited.

**DATE OF EXECUTION:**

_Miranda Steines_
**Signature of Purchaser**
Miranda L Steines

_Adam U Steines_
**Signature of Purchaser**
Adam U Steines

_____
**Signature of Purchaser**

_____
**Signature of Purchaser**

(As to Purchaser) August 31, 2019
(As to Developer) August 31, 2019

_Robin Fincham Wilder_
**Signature By or On Behalf of Seller**
35644530657-015 BRUNOW
APRIL N ATHERTON 65354
YENIS N FERNANDEZ MENDEZ 32580
ROBIN F WILDER 14755
2:47 PM

* "Notify", for purposes of Sections 721.06(1)(g) and 721.065(2)(c), Florida Statutes, shall mean that a written notice of cancellation is delivered, by any means which may include certified mail return receipt requested, to the entity designated to receive the notice of cancellation in the statement required by Sections 721.06(1)(g) or 721.065(2)(c), Florida Statues.

WP006A  01/2018

**Description of Timesharing Plan**: Purchaser acknowledges receipt of the Timesharing Plan, which describes the nature and duration of the Timeshare Plan. The Timeshare Plan is established for a term of fifty (50) years from creation by the Developer. The Developer has recorded a Declaration in the Public Records of Orange County, Florida, a Declaration of Covenants, Conditions and Restrictions (the Timesharing Plan) setting forth the rights, obligations, benefits and burdens of each Owner with respect to the Timeshare Accommodations and Facilities (Common Amenities). The Timesharing Plan contains various definitions, which definitions are incorporated herein by reference.

Pursuant to the Timesharing Plan, the Developer shall convey to each Purchaser the ownership in fee simple of an undivided interest as a tenant in common with the other Owners in a particular building in the Resort Facility, one Timeshare Interest being a fraction, the numerator of which is one (1) and the denominator of which is the number of Units in the building multiplied by fifty-two (52), which interest shall constitute said Owner's Timeshare Interest. The Timeshare Interest conveyed shall be limited to an undivided interest only in the building in which the Assigned Unit and Assigned Unit Week is located. Each Timeshare Interest equals an undivided interest as set forth in the Plan. A Biennial Timeshare Interest equals an undivided interest as set forth in the Plan. An Owner can be the Owner of more than one (1) Timeshare Interest. The conveyance by the Developer of a Timeshare Interest to an Owner shall designate to such Owner the use of an Assigned Unit and an Assigned Unit Week. The Owner shall be entitled to the possession of the Assigned Unit only during the Assigned Unit Week.

There shall be certain Facilities available for use by Owners in connection with ownership in the Timeshare Accommodations. The Developer may, however, is not obligated to, add additional properties and improvements to the Facilities in its sole discretion, without the consent of the Association or any Owner.

2. **Completion of Construction of Accommodations and Facilities**: The construction, finishing and equipping of the accommodations and facilities is complete.

3. **Total Financial Obligation of Purchaser**: Each Purchaser shall be obligated to pay the purchase price indicated on the face of the Contract for Purchase and Sale and the finance charge as indicated thereon (in the event the purchase price is financed in whole or in part) and, in addition thereto, shall be obligated to pay maintenance fees as set forth in paragraph "6" of this Agreement, closing costs as described in paragraph "7" of this Agreement, exchange membership dues set forth on the face of this Agreement, in the event the purchaser elects to become a member of the exchange program in the event Purchaser desires to purchase same. The Purchaser shall not be obligated to pay any other charges except recurring maintenance expenses as set forth in the Timesharing Plan and property tax assessments as assessed by appropriate local governmental authorities. Purchaser acknowledges that the Warranty Deed and purchase money Note and Mortgage, if any, executed in connection herewith are being held in escrow and shall not be deemed operative or delivered until such time as the transaction closes as set forth in paragraph 8 below. The obligation to pay as set forth in the Note and Mortgage shall not be created until the closing. However, pending the closing of this transaction, Purchaser shall be contractually required hereunder to make the payments set forth in the Note as additional deposits under this Contract, which payments, along with the initial deposits and all other additional deposits, shall be subject to the provisions of Section 721.08, Florida Statutes. If, as and when the transaction closes, such additional deposits will be credited against payments due under the Note.

4. **Cancellation of Contract**: In the event the Purchaser cancels the Contract during a ten (10) day cancellation period, the Developer will refund to the Purchaser the total amount of all payments made by the Purchaser under the Contract, reduced by the agreed upon value of any Contract Benefits the Purchaser has actually received under the Contract prior to the effective date of the cancellation. CONTRACT BENEFITS SHALL INCLUDE, BUT NOT BE LIMITED TO, THE OWNER'S KIT (EXCLUDING THE PUBLIC OFFERING STATEMENT) DELIVERED TO PURCHASER AT THE POINT OF SALE, FIFTY ($50.00) DOLLARS SHALL BE DEDUCTED FROM THE REFUND FOR EACH OWNER'S KIT THAT IS NOT RETURNED UPON CANCELLATION, ANY COMPUTER TABLET DELIVERED TO PURCHASER AT THE POINT OF SALE IS A CONTRACT BENEFIT, ONE HUNDRED FIFTY ($150.00) DOLLARS SHALL BE DEDUCTED FROM THE REFUND FOR EACH COMPUTER TABLET THAT IS NOT RETURNED UPON CANCELLATION. OCCUPANCY PRIOR TO RESCISSION FOR WHICH NO SEPARATE PAYMENT IS MADE IS A CONTRACT BENEFIT WITH AN AGREED UPON VALUE OF $200.00 PER NIGHT. ANY MEALS PROVIDED TO PURCHASER AFTER EXECUTION OF A CONTRACT SHALL BE A CONTRACT BENEFIT WITH AN AGREED UPON VALUE OF $15.00 FOR ADULTS AND $8.00 FOR CHILDREN (11 YEARS OF AGE AND YOUNGER) PER MEAL, AND ANY ATTRACTION TICKETS PROVIDED TO PURCHASER AFTER EXECUTION OF A CONTRACT SHALL BE A CONTRACT BENEFIT WITH AN AGREED UPON VALUE OF THE RETAIL VALUE OF THE TICKET. The refund shall be made within twenty (20) days, after receipt of notice of cancellation or within five (5) days after receipt of funds from the Purchaser's cleared check, whichever is later.

5. **Ownership of Accommodations and Facilities**: The Developer is the Owner in fee simple absolute of the Timesharing Plan. The Accommodations and Facilities will not be subject to any liens or encumbrances, except those set forth in the owner's policy of title insurance to be delivered to each Purchaser.

6. **Maintenance Fees**: Purchaser acknowledges that, in addition to the purchase price and closing charges, Purchaser will be responsible, in accordance with the Timesharing Plan, for the payment of a pro rata share of the Common Expenses, assessments, maintenance fees and other expenses incurred in the operation of the Timeshare Accommodations and Common Facilities. The current maintenance assessment for each timeshare interest purchased, shall be as set forth on the first page of this Agreement exclusive of real estate taxes which are to be separately assessed.

7. **Closing Costs and Expenses of Sale**: Purchaser acknowledges that in addition to the purchase price of each timeshare interest, Purchaser must pay certain other "Closing Charges" when (t)he(y) accept ownership at closing of title. Purchaser shall be obligated to pay to Seller, in addition to the purchase price, all Closing Charges in the amount set forth on the face of this Agreement, which Closing Charges include, but are not limited to, the payment of documentary stamps on the Warranty Deed, title insurance fees, recording charges, intangible and documentary stamps on any Note and Mortgage executed in connection with this transaction, credit investigation report, Developer's administrative closing and processing fee and Developer's attorneys' fees. Purchaser acknowledges that such Closing Charges are not to be considered part of the purchase price. Purchaser acknowledges that the Closing Charges are the same regardless of whether the transaction is financed or whether the Purchaser initially elected to obtain financing and converted to an all cash deal while the transaction remains in escrow. Seller shall be responsible for the payment of any documentary stamps or intangible tax that may be due on the transaction. In the event the Note and Mortgage are executed, and the Purchaser elects to convert the transaction to an all cash transaction by paying the purchase price in full while the Note and Mortgage are in escrow, the parties agree that the Note and Mortgage will be of no force and effect and shall be deemed to have never been delivered. Unless this transaction is cancelled in accordance with paragraph 4 above, there shall be no refund of any portion of the Closing Charges. Notwithstanding anything contained herein to the contrary, the Seller makes no representations whatsoever that any portion of the Closing Charges to be collected from the Purchaser represent state funds that shall be utilized to pay taxes. In this regard, it is understood and agreed that Seller shall pay only state documentary stamp taxes and intangible taxes which are required to be due and payable at the time a Contract for Purchase and Sale is closed which documentary stamp and intangible taxes shall be calculated as required by law based upon those documents which are actually submitted for recording. If the Purchaser defaults, any Closing Charges previously paid shall not be utilized to pay any documentary stamp and intangible taxes and instead shall be deemed part of additional deposits paid by Purchaser and shall be retained by Seller as liquidated damages.

8. **Estimated Date of Closing**; Occupancy Prior to Closing: The term "closing" shall have that meaning as set forth in Florida Statutes, Chapter 721.05(5). The estimated date of closing of this transaction shall be subsequent to the payment by Purchaser of the total down payment in the amount set forth on the face of this Agreement, and clearance of all funds. The exact date of closing shall be as determined by Developer but shall be no later than thirty-six (36) months from the date of execution of this Agreement. In addition, if not yet complete, Seller is obligated to complete construction of the building in which the Timeshare Interest is located within thirty-six (36) months from the date of this Agreement. However, the completion date is subject to and may be extended by Seller by reason of circumstances beyond Seller's control, including, but not limited to, work stoppages, the unavailability of labor or materials, the unavailability of mortgage financing, governmental orders, other events which support a defense based upon impossibility of performance for reasons beyond Seller's control, or acts of God. If prior to closing, Purchaser is making payments on a Purchase Money Mortgage in Escrow, then closing may in the Developer's sole discretion be conditioned upon Purchaser having made prior to the date of closing, twelve timely monthly mortgage payments and being current in all mortgage payments prior to the date of closing. Upon execution of this Contract for Purchase and Sale, Seller and Purchaser intend to execute all documents necessary for closing, including a Warranty Deed, Promissory Note, Mortgage and other loan closing documents in the event this transaction is to be financed in whole or in part. Such closing documents are to be held in escrow by Seller or an escrow agent designated by Seller, pending closing. The Developer may, at its sole option, allow the Purchaser to occupy a Timeshare Unit after the rescission period has expired but prior to closing. In such event, the Developer may require the Purchaser to pay the then current maintenance fee for the Timeshare Unit occupied by Purchaser, in lieu of rent This payment is outside of escrow as it is in return for occupancy of a Unit. Accordingly, any fees paid hereunder will not be refunded in the event of cancellation by Purchaser.

9. **Condition of Title**: Seller shall convey title to Purchaser by Warranty Deed and shall record same in the Public Records of Orange County, Florida. The Warranty Deed shall designate a Unit which the Purchaser shall occupy and a Unit Week during which the Purchaser shall occupy his Unit. Seller shall provide Purchaser with insurable title, and Seller agrees to provide Purchaser, within one hundred eighty (180) days after closing, with an owner's policy of title insurance issued by a title insurance company licensed in Florida. The title insurance policy will be issued at no expense to Purchaser beyond the closing costs required pursuant to paragraph 7 hereof. This policy will contain details of any limitations on Purchaser's title. Permitted limitations are liability for all taxes starting the year Purchaser acquires title; any restrictions, covenants, limitations, reservations or easements of record; any restrictions, covenants, terms and other provisions of the Timesharing Plan, and all Exhibits thereto, as may be amended; any Mortgage or other loan documents executed by Purchaser; and the general exceptions contained in the standard A.L.T.A. owner's policy of title insurance. Further, the title policy issued to Purchaser shall specifically exclude coverage for any event whatsoever occurring with respect to the Timesharing Plan, or any interest therein, caused by virtue of any preemption of State law, including, but not limited to, any of the provisions of Florida Statutes, Chapters 721, or any of the terms and provisions of Chapter 11, United States Code. In the event Seller is unable to provide title as provided for herein, Purchaser shall have the option of accepting title in its existing condition and of payment of the full purchase price whereupon no further claims may be made upon Seller, or, Purchaser may cancel this Contract for Purchase and Sale and receive a full refund of all deposits paid in complete satisfaction of all claims against Seller.

10. **Loan Financing**: Purchaser acknowledges that Seller may provide mortgage financing upon such terms, conditions and limitations as may be determined in Seller's sole discretion. If Purchaser desires financing, a loan application will be completed and submitted in connection with this Contract for Purchase and Sale, together with the execution of all mortgage loan closing documents and said loan application shall be subject and conditioned upon Seller's approval for credit worthiness.

11. **Construction and Furnishing Specifications**: Materials, equipment, fixtures, furniture and furnishings to be used in a Unit will be substantially similar to those described in Seller's plans and specifications maintained by Developer and to the Model Unit(s) made available by Seller for viewing by Purchaser. In this regard, Purchaser acknowledges that such Model(s) are for display purposes only and that Purchaser's Assigned Unit shall have the furniture, appliances, equipment substantially similar to, or of equal quality to, those shown or used in the Model(s). To this extent, Seller warrants and represents that Purchaser's Unit will contain furnishings and furniture substantially similar to that contained in any Model Unit exhibited to Purchaser.

12. **Seller's Use of the Property**: For such period of time as Seller owns any timeshare interest, Seller and its agents may keep offices and Model Units in the property. Seller's salesmen, agents and representatives may exhibit these Units, erect advertising signs and do whatever else that may be necessary and helpful for sales or rentals. Seller may sell timeshare interests or lease or rent Units or Unit Weeks on a temporary or transient basis.

13. **Purchaser's Default**: In the event that Purchaser fails to comply with any of the terms, conditions and provisions of this Contract for Purchase and Sale, including the failure to execute all closing documents as may be reasonably required of Purchaser or to pay the balance of the purchase price due (a "Default"), Purchaser shall be in default, and Seller shall have the right to declare this Contract for Purchase and Sale cancelled. Upon Default, Seller may retain any deposits made by Purchaser and enforce any Promissory Note that may have been executed by Purchaser in connection with any additional deposits due hereunder as full and complete liquidated damages. For purposes of this paragraph, the term "deposit" shall mean the initial down payment made by a Purchaser, any additional deposits due in accordance with the terms of this Contract and any Promissory Note made pursuant to the Purchase Money Promissory Note, if any, executed in connection herewith. Notwithstanding the foregoing application of payments under the Purchase Money Promissory Note upon Default, once the closing occurs, all payments made pursuant to the Purchase Money Promissory Note shall be applied in accordance with its terms. Seller may then resell the timeshare interest without any accounting to Purchaser. Upon default of a Purchaser, Escrow Agent shall be authorized to release to Seller any and all documents previously executed by Purchaser and delivered by Seller and all monies held in escrow.

14. **Seller's Default**: In the event Seller defaults in any of its promises or fails to perform any of its duties under this Contract for Purchase and Sale, then Purchaser shall give Seller written notice of such default, and, if within ten (10) days from receipt of such notice, Seller fails to commence action that would cure the default within a reasonable period of time, Purchaser shall have all remedies permitted by law, including, but not limited to, the right of specific performance.

15. **Attorney's Fees**: In the event of any litigation arising out of this Contract, the prevailing party will be entitled to recover its reasonable attorney's fees, including paralegal fees, and all costs and fees on appeal.

16. **Notices**: Any time Purchaser and Seller are required to notify each other, the notice must be in writing. All notices, other than a notice of cancellation, may be sent by regular mail, electronic mail and / or text message. All notices will be sent to the street address, email addresses and /or telephone numbers specified on the face of this Contract. Either party may change their street address, email addresses and telephone numbers for notices by notifying the other in writing. A notice of change of street address, email addresses or telephone number is effective when received. All other notices are effective on the date sent.

17. **Transfer or Assignment**: Purchaser shall not assign, sell or transfer its interest in this Contract for Purchase and Sale without receiving Seller's prior written consent. Following closing of title and the recording of a Warranty Deed in favor of Purchaser, Purchaser's right to transfer a Unit Week shall be made pursuant to the Declaration of Covenants, Conditions and Restrictions. Seller can assign or transfer its interest in this Contract for Purchase and Sale and Purchaser's consent will not be required.

18. **Purchaser's Acknowledgments**: Purchaser acknowledges that Purchaser has received a copy of the Public Offering Statement, together with all Exhibits attached thereto. Seller reserves the right to make changes in any of such documents as described in the Public Offering Statement, as Seller, governmental authorities having jurisdiction over the Timeshare Accommodations, or mortgage lenders require or deem necessary, provided such changes do not materially and adversely affect Purchaser's right to the use and enjoyment of the Timeshare Accommodations. Seller hereby declares that no representations have been made to the purchaser as to the potential future profit, rental potential, tax advantages, depreciation or other investment potential or other monetary or financial advantage.

19. **Notice Regarding** Title Insurance: The Developer shall provide each Purchaser with a title insurance policy issued by a title insurance company licensed in the State of Florida. In the event a Purchaser wishes to receive a title insurance policy from a company other than as specified by Developer, Purchaser may do so upon providing Developer with notice of Purchaser's election within fifteen (15) days of the date hereof. Upon making such election, Purchaser will be reimbursed for the cost of such title policy in the amount of the minimum promulgated rate adopted pursuant to the rules of the Insurance Commissioner of the State of Florida. In the event no such election is made by Purchaser, such failure to elect shall be deemed an absolute waiver thereof.

20. **Broker Participation**: Seller hereby advises Purchaser that WESTGATE MARKETING, LLC or other broker designated by Seller ("Broker") is acting as exclusive sales agent for Developer. All commissions payable to said agent shall be paid for by Developer.

21. **Entire Agreement**: This Contract for Purchase and Sale contains the entire agreement and contract for the sale and purchase of the timeshare interest as described herein and, following execution, it can only be amended by another agreement in writing.

22. **Warranties**: TO THE EXTENT LAWFUL, ALL IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY, AND ALL WARRANTIES IMPOSED BY FEDERAL OR STATE STATUTES, ARE SPECIFICALLY DISCLAIMED.

23. **Choice of Law; Jurisdiction; Venue; and Waiver of Jury Trial**:
   a. It is the parties' express intent that this Agreement and the rights, duties and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Florida (excluding application of its conflict of laws principles) and, to the extent they preempt the laws of such state, the laws of the United States.
   b. Purchaser (a) hereby irrevocably submits itself solely to the exclusive process, personal jurisdiction and venue of the courts of the State of Florida, Orange County, and to the exclusive process, personal jurisdiction and venue of the United States District Court for the Middle District of Florida, for the purposes of every and all suits, actions or other proceedings arising out of, in connection with or in any way relating to this Agreement or to the subject matter hereof regardless of whether based upon contract, common law or federal or state statute; (b) agrees that every and all suits, actions or other proceedings under or arising out of, in connection with or in any way relating to this Agreement or to the subject matter hereof regardless of whether based upon contract, common law or federal or state statute that Purchaser may bring, file or initiate shall be brought, filed or initiated only and exclusively in such courts and in no other court; (c) if Seller initiates any such suit, action or proceeding, Purchaser irrevocably submits itself to the process, personal jurisdiction and venue of any court in which Seller shall initiate such action and the choice of such venue shall in all instances be at Seller's sole and exclusive election; and (d) without limiting the generality of the foregoing, hereby waives and agrees not to assert by way of motion, defense or otherwise in any such suit, action or proceeding any claim that Purchaser is not personally subject to the jurisdiction of the above-named courts, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Purchaser hereby waives the right to collaterally attack any judgment or action in any other forum.
   c. PURCHASER AND SELLER HEREBY ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR BETWEEN THE PARTIES TO THIS AGREEMENT, THEIR AFFILIATES, SUBSIDIARIES, SUCCESSORS OR ASSIGNS AND IRRESPECTIVE OF WHETHER SUCH LITIGATION ARISES OUT OF THIS AGREEMENT, BY STATUTE, OR AS A MATTER OF TORT LAW, WOULD BE BASED UPON DIFFICULT AND COMPLEX ISSUES AND, THEREFORE, EACH PARTY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MIGHT HAVE TO A TRIAL BY JURY IN ANY SUCH PROCEEDING.
   d. Notwithstanding anything contained herein to the contrary, the provisions of subparagraphs (b) and (c) above shall only apply if the Purchaser opts out of the Arbitration Addendum attached hereto, the Arbitration Addendum is deemed not to apply, or Seller initiates the lawsuit.
   e. All of the provisions set forth in this paragraph are a material inducement for Seller's entering into the transaction with Purchaser.

24. **Escrow Agreement**: Developer has entered into an Escrow Agreement with GREENSPOON, MARDER, HIRSCHFELD, RAFKIN, ROSS & BERGER, P.A., 100 West Cypress Creek Road, Trade Centre South, Suite 700, Fort Lauderdale, Florida 33309, (Escrow Agent). Escrow Agent shall hold all deposits made by Purchasers, in escrow, in accordance with said Escrow Agreement.

Notwithstanding anything contained herein to the contrary, all funds received from Purchaser and held in escrow pursuant to the provisions of Florida Statutes, Chapter 721.08 shall be disbursed to Seller only in accordance with Florida Statutes, Chapter 721.08 and the Escrow Agreement entered into between Seller and Escrow Agent. A copy of the Escrow Agreement is attached as an Exhibit to the Public Offering Statement delivered to Purchaser. Any interest earned on any deposits made by Purchaser, and held in escrow, shall inure to the exclusive benefit of Seller.

Notwithstanding the foregoing escrow provisions, Purchaser does hereby agree that in lieu of any escrows required by this Contract, the Escrow Agreement or Florida Statutes Chapter 721.08(1), Developer may establish alternative assurances acceptable to the Director of the Division of Florida Land Sales and Condominiums in accordance with Florida Statutes Chapter 721.08(2).

25. **Radon Gas**. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

26. **Resales**. Any resale of this timeshare interest must be accompanied by certain disclosures in accordance with section 721.065, Florida statutes.

27. **Limited Power of Attorney**. Purchaser hereby grants to Seller a limited power of attorney for the purpose of correcting errors in documents and legal descriptions, to conform vesting on the deed and mortgage, and to otherwise make corrections to documents that do not materially affect the Purchaser's rights or title to the Timeshare Interest being acquired hereby.

28. **Construction Defects Disclosure**. FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.